# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No: 07 CR 0018 |
| ) | |
| JOHN THOMAS AMBROSE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

The court has under advisement the motion of the defendant, John T. Ambrose, for release pending appeal. The parties agree on what he must show in order to be entitled to release. The applicable statute provides that a defendant who has been sentenced to a term of imprisonment shall be detained pending appeal unless he can show that the appeal "raises a substantial question of law or fact likely to result in — (I) reversal [or] (ii) an order for a new trial...." 18 U.S.C. § 3143(b)(1)(B). A question is "substantial" if it "presents a close question or one that very well could be decided the other way." United States v. Shoffner, 791 F.2d 586, 589 (7th Cir. 1986) (internal quotation marks omitted). If the defendant demonstrates the existence of a substantial question, he must go on to demonstrate that if the question is decided in his favor "the appellate court is more

likely than not to reverse the conviction or order a new trial." United States v. Bilanzich, 771 F.2d 292, 298 (7th Cir. 1985).

The effect of the statute, then, is that the defendant must show that the appellate court is more likely than not to find the errors affecting his conviction were so prejudicial that the appropriate remedy is either an outright reversal or a new trial. Before discussing the specific errors alleged by the defendant, we will examine the strength of the evidence regarding his guilt, because that has an obvious connection to the question of whether the alleged errors were prejudicial at all, let alone so prejudicial as to require a reversal or a new trial.

Some of the errors asserted by the defendant have to do with the constitutionality of the statute involved in Count Two and the constitutionality of the interrogations which took place at the FBI headquarters. Should the Court of Appeals rule in the defendant's favor on these constitutional questions, he would be entitled to appellate relief regardless of the weight of the evidence of his guilt. But assuming the constitutional questions are resolved in the government's favor (a matter we will discuss infra), it is our view that none of the other alleged errors are likely to result in a reversal or a new trial because they were not prejudicial in the sense that they arguably brought about the defendant's conviction. This is because the defendant's presentation at trial admitted his guilt under both counts of conviction, and, considering that

presentation, it is highly unlikely that the jury could have found him not guilty on either count. We will explain what we mean.

Count I of the superseding indictment charges that the defendant stole certain information regarding the witness Nicholas Calabrese, who was in the witness protection program. All that the statute involved in Count I (18 U.S.C. § 641) requires is that the defendant knowingly converted the protected information to his own use or the use of another. It does not require any particular "motive," and certainly does not require that the defendant steal the information for the purpose of selling it. Count II of the superseding indictment charges that, without the authorization of the Attorney General, the defendant knowingly disclosed that same protected information. Again, the statute involved in Count II (18 U.S.C. § 3521(b)(3)) does not require any venal motive for the disclosure; it requires only that the disclosure be made knowingly and without authorization.

In our view, the defendant, through his counsel, admitted his guilt of each of the violations alleged, albeit arguing that he lacked "criminal intent" (but a type of intent not required by either count of conviction). In his opening statement to the jury, referring to the defendant's interview with Messrs. Fitzgerald and Grant, defendant's counsel stated:

> Let there be no doubt about it. John did say repeatedly to them, "I messed up. I screwed up. I fucked up, but it's not what you think."

> John did make a mistake. He made a big mistake in his job, but we submit the evidence will show that John did not act with any criminal intent to commit any of the charged crimes.

(Trial Tr. ("Tr."), Vol. I, at 21.)[1]

A few minutes later, counsel continued:

> Now, let me just cover with you a couple of other additional pieces of evidence, some things that Mr. Funk [the prosecutor] raised. Sadly, John's dad did die in prison after being convicted in the so-called Marquette 10 case. John's dad was a Chicago Police Department officer who was convicted. He was sent to prison, and he died in prison.
>
> Another member of the Chicago Police Department was Bill Guide, and Bill Guide worked in the Marquette district. He was convicted in that case, and he was sent to prison. When he was released from prison – and by the way, when John's father was convicted and died in prison, John was very young. He's 42 today. Yesterday was his birthday. He was very young, a young kid.
>
> When Guide got out of prison, Guide became somewhat of a father figure to John. He became – John became very close to Guide over the years. And what happened here is they shared – they shared a relationship based on their background and based on their mutual love of amateur wrestling, kid wrestling, where they both were active. And they had a lot of time to spend talking about that. And they also talked about the job, which police officers and agents do.
>
> And John got caught up in this because <u>he was boasting about what he had done and what he was doing</u>. But nothing he said was sensitive or put anybody in any danger.

(Tr., Vol. I, at 27-28(emphasis added).) From the outset of the trial, then, the defendant admitted that he converted the

---

[1] This page reference will no longer be accurate when the full transcript has been prepared. We refer to page 21 of the partial transcript the court reporter has furnished us.

information and disclosed it to Mr. Guide by way of a boast to a friend. But the statutes involved in this case make no exception for boasting. If the information is knowingly converted and knowingly disclosed without authorization, the statutes are violated. We suppose there could be an unlimited variety of possible motives, including the desire to impress a friend. However, we can think of no motive that would vitiate the criminality of the knowing conversion or knowing unauthorized disclosure of the information.

In his final argument to the jury, counsel again admitted that the defendant had acknowledged in the interview with Messrs. Fitzgerald and Grant that he had disclosed the protected information to Mr. Guide:

> And Ambrose said, "Listen, I shot my mouth off, and I violated – I broke policy. I broke rules. I broke procedure, but I never had any criminal intent.

(Tr., Vol. II, at 51.)

It is with these admissions in mind that we turn to a discussion of the claimed errors that allegedly brought about the defendant's conviction.

*   *   *   *

We begin by noting a reference the defendant makes to a remark of this court that he takes out of context. On pages 1 and 2 of his motion, the defendant states:

> The Court ... ultimately departed above the advisory range under the Sentencing Guidelines ... while

> acknowledging that the jury convicted Mr. Ambrose on "the bare minimum."... With all due respect, the Court made several substantial errors during the course of the prosecution. It is our view that Mr. Ambrose engaged in technical violations of the law at most, perhaps acting negligently or recklessly at times, but certainly not intentionally engaging in the crimes for which he stands convicted by "the bare minimum."

This seems to imply that we said the evidence was the "bare minimum" necessary to convict the defendant. The context of the remark is not indicated (nor do we have the portion of the transcript in which the remark was made), but we are sure it had nothing to do with the quantum or sufficiency of the evidence. Rather, it concerned the fact that on each of Counts I and II the jury convicted the defendant of stealing and disclosing only <u>some</u> of the information set forth in the count (one of eleven items in Count I, two of eleven items in Count II). We believe we made the remark at the defendant's sentencing. At no time did we express any opinion that the evidence of the defendant's guilt was minimal, nor would there have been any reason for us to express such an opinion. The evidence of guilt was more than sufficient, and, as indicated above, it was uncontradicted in any material respect.

* * * *

The defendant argues that he is neither a flight risk nor a danger to the community. (Def.'s Mot. at 3-4.) We agree, and the government does not contend otherwise.

Next, the defendant argues that we should have granted his Motion to Dismiss Count Two of the Indictment on the ground that 18

U.S.C. § 3521 is unconstitutional. We have rejected that argument in a written opinion and have nothing to add at this time. We do not believe that this issue is likely to result in a reversal.

Next, the defendant argues that the court erred in denying his motion to suppress the statements he made during the interviews with Messrs. Fitzgerald and Grant and the FBI agents. (Id. at 6-9.) The defendant contends:

> The standard is whether a reasonable person in the defendant's place would have felt he was not at liberty to terminate the questioning and walk away. The facts were quite clear that there was a restraint on freedom of movement of a degree associated with formal arrest, and thus, no, a reasonable person would not have felt free to simply walk away from U.S. Attorney Patrick J. Fitzgerald and FBI Special Agent In Charge Rob Grant.

(Id. at 7.) The defendant makes the same factual arguments he made at the conclusion of the hearing on the Motion to Suppress and finds the facts to be "quite clear," raising a substantial issue for the Court of Appeals. He makes no reference to the extended statement of reasons the court gave for denying the motion. As we recall, our opinion took an hour or more to deliver. We found that Mr. Ambrose was free to leave, that he had been so informed, that his testimony to the contrary was not credible; that in fact he remained at the FBI building of his own accord in a prolonged and desperate effort to persuade Mr. Fitzgerald to help him keep his job. These factual findings by the court are not addressed in any

way by the pending motion, and we think it highly unlikely that the Court of Appeals would reverse our factual findings.

\* \* \* \*

One of the defendant's principal arguments is that we erred in admitting the tape recordings of the Marcello brothers' prison conversations as circumstantial evidence that there had been leaks of information from the witness protection program. (Id. at 9-13.) We believe the evidence was proper. We recognized the hearsay problem and gave the jury repeated instructions not to consider the tapes for the truth of anything stated on them but only as circumstantial evidence related to the question of whether there had been leaks from the witness protection program. The defendant argues that these instructions were inadequate to apprise the jury of the limited purpose of the tapes, but we disagree. The defendant does not point out anything that was inaccurate or misleading about what we repeatedly told the jury. During the trial, as the government points out (Resp. at 11), defense counsel requested that we repeat the instruction, and we complied with that request. And during his final argument, he asked the jury to "keep [the instruction] in mind":

> Now, the judge, of course, instructed you during the trial that when he was talking about the various tapes, that that was being introduced just for a limited purpose, so please keep that in mind.

(Tr., Vol. II, at 88.) As the government points out (Resp. at 9), jurors are presumed to follow the court's instructions, and there is no indication that they failed to do so in this case.

The defendant complains of the fact that in regard to one of the tapes we changed our ruling, informing the jury that they should disregard a tape we had previously admitted, because we had "made a mistake." We instructed the jury to disregard that tape entirely because it consisted of hearsay rather than circumstantial evidence. The defendant contends that this instruction was ineffective and that he was prejudiced by the hearsay contained on the ultimately excluded tape. In its response, the government makes a good point: the verdict of the jury on each of the counts, finding the defendant guilty of stealing and disclosing only items of information discussed by the Marcellos on tapes that were properly admitted as circumstantial evidence, indicates that they had no trouble following the court's instructions. The items contained on the tape that was mistakenly admitted and ultimately excluded (set forth at page 11 of the defendant's motion) were not even charged in the indictment as having been stolen or disclosed by the defendant.

\* \* \* \*

The defendant makes another argument in connection with tapes that he believes will amount to a substantial issue on appeal. He complains of the court's refusal to admit, at his instance, other

recorded conversations of the Marcello brothers that he says indicated an alternate source of any leaks. (Def.'s Mot. at 12-13.) The defendant's discussion omits any reference to the reasons the court gave for its ruling, complaining that ". . . the Court inexplicably reversed itself, agreed with the government, and barred Mr. Ambrose from putting the exculpatory statements in evidence." (Id. at 13.) In fact, the court presided over an extensive examination of Michael Marcello in order to determine the admissibility of these additional conversations and, at length, concluded that they were not being offered as circumstantial evidence, but, rather, as pure hearsay. It was on that basis that the court changed its mind and denied admission of this evidence. The defendant's argument does not address the hearsay issue.

We might observe at this point that, even if the tapes offered by the government had been improperly admitted, and the tape offered by the defendant improperly excluded, it is difficult to see how the jury could have reached any verdict but guilty based on the defendant's own admissions, as discussed supra at 3-5.

\* \* \* \*

Defense counsel complains about the refusal of the court to give the specific intent instruction he tendered:

> A substantial question of law exists as to whether the Court committed error in its rejection of a specific intent instruction. The proposed instruction read: "The crimes charged in counts one and two require proof of specific intent before the defendant can be convicted. Specific intent, as the name implies, means more than

> general intent to commit the act. To establish specific intent the government must prove that the defendant knowingly did an act which the law forbids, purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case."
>
> <u>The proposed instruction was submitted in accordance with 4.08 Committee Comment of the Seventh Circuit's Federal Jury Instructions</u>, and related principally to: (1) the second element of the Court's instruction on count one relating to the act of stealing and/or converting the alleged information; (2) the third element of the Court's instruction on count one relating to the deprivation to the United States; and (3) the elements of the Court's instruction on count two relating to the disclosure of information "knowingly."

(<u>Id.</u> at 13-14 (emphasis added).) We have two significant problems with this argument. First, the statement that the instruction "was submitted in accordance with 4.08 Committee Comment of the Seventh Circuit's Federal Jury Instructions," is simply false. The following is a quotation of the current Committee Comment, the 1999 edition titled "4.08 Specific Intent – General Intent":

> The Committee recommends avoiding instructions that distinguish between "specific intent" and "general intent". In place thereof the Committee recommends that instructions be given which define the precise mental state required by the particular offense charged. Accordingly, district judges should determine the requisite mental state as to each element of the charged offense and instruct thereon.
>
> Traditionally, courts have distinguished between "specific intent" and "general intent". The stock "specific intent" instruction reads: The crime charged in this case requires proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the government must prove that the defendant knowingly did an act which the law forbids (or knowingly failed to do an act which the

law requires), purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case (and from similar prior crimes and transactions). W. LaBuy, Jury Instructions in Federal Criminal Cases § 4.04, reprinted in 33 F.R.D. 550. See also I E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 14.03 (3d ed. 1977). Conversely, "general intent" generally is defined as follows: In determining defendant's intention the law assumes that every person intends the natural consequences of his/her voluntary acts (or omissions). Therefore, the general intent required to be proved as an element of the crime is inferred from defendant's voluntary commission of the act forbidden by law (or his/her omission of the duty required by law), and it is not necessary to establish that defendant knew that his act (or omission) was a violation of law. LaBuy, supra at § 4.03 reprinted in 33 F.R.D. 549.

Distinctions between "specific" and "general" intent more than likely confuse rather than enlighten juries. <u>For example, to speak of a defendant's "purpose" or to use the phrase "purposely intending to violate the law" requires a jury to find that a defendant knew his/her act violated the law. Ordinarily, that is not an essential element of the offense</u>. See <u>United States v. Brighton Building & Maintenance Co.</u>, 598 F.2d 1101, 1105 (7th Cir.), <u>cert</u>. <u>denied</u>, 444 U.S. 840, 840 (1979) (criminal antitrust prosecution: "Defendants [are] not entitled to an instruction which [includes] the ... phrase [that the defendant knowingly did an act which the law forbids, purposely intending to violate the law]. 'A requirement of proof not only of this knowledge of likely effects, but also of a conscious desire to bring them to fruition or to violate the law would seem, particularly in such a context, both unnecessarily cumulative and unduly burdensome'"). Similarly, to state that "general intent" is an element of the offense inadequately and erroneously directs the jury on the issue of intent. <u>Thus the stock instructions should be avoided</u>.

The Seventh Circuit Court of Appeals commented on the issue in <u>United States v. Arambasich</u>, 597 F.2d 609 (7th Cir. 1979). There defendant appealed from convictions under the Hobbs Act for extortion and conspiracy to extort. At trial, defendant tendered a stock specific intent instruction which the district court refused. Instead the trial court defined the requisite intent as

the intent to obtain something which the defendant knew he was not entitled to receive with knowledge that it was the product of fear of economic harm. On appeal, the court affirmed the convictions, stating:

> We are inclined to agree with the district judge in the case at bar that the labels "specific intent" and "general intent," which are emphasized in the stock instructions he refused to give, and the distinction the instructions attempt to make between these categories of intent, are not enlightening to juries. More specific and therefore more comprehensible information is conveyed by stating the precise mental state required for the particular crime.
>
> . . .
> In the case at bar that mental state consisted of an intent to obtain money from contractors with the knowledge that it was paid because they feared economic harm and that the defendant was not entitled to receive it....
>
> . . .
> It is unnecessary to use the term "specific intent" or to give any particular form of instruction.
>
> The stock "specific intent" instructions tendered by [defendant] are based on decided cases and have been approved in countless others. Yet they illustrate, if not the "variety" or "disparity," the "confusion of [judicial] definitions of the requisite but elusive mental element" . . . . It is not very helpful to speak of a defendant's "purpose" to violate the law, as do these stock instructions. Use of the phrase "purposely intending to violate the law" may be erroneously interpreted by jurors, for example, to require that the defendant know his act violates a criminal statute, which is ordinarily unnecessary . . . . Giving one of the stock instructions may therefore not only confuse but mislead the jury to the prejudice of the prosecution. A trial judge is accordingly justified in refusing to give it,

> if he adequately instructs on the requisite mental state by other means.
>
> United States v. Arambasich, 597 F.2d at 611-613 (citations omitted).

Federal Criminal Jury Instructions of the Seventh Circuit 4.08 (West 1999) (emphasis added) (some citations omitted.) The Comment goes on in a similar vein for several more paragraphs, but the view of the Committee (and the recent cases) is fully captured in the portion we have quoted.

It is significant that the current volume of the Seventh Circuit Instructions contains only the Comment, not any instruction that the Committee recommends be given. The instruction the Committee recommends not be given is quoted in paragraph two of the Comment and is the identical instruction defense counsel represents that the Committee recommends be given.

This difference between what the Committee in fact recommends, and what counsel says it recommends, is difficult to understand, and this is our second problem with his argument. In citing Comment 4.08, defense counsel obviously had to consult the current volume, which omits the instruction and states that it should not be given. That very same advice by the Committee is included as Comment 6.02 in the 1980 Volume, which, like the 1999 (current) volume, does not include the instruction but only the Comment recommending that it not be given. In order to find the specific intent instruction included in a volume of Seventh Circuit

Instructions, the defendant would have had to consult the 1965 volume, where it appeared as Section 4.04 (not 4.08). Continuously since as early as 1980 – thirty years ago – the Committee recommendation has been against a "specific intent" instruction.[2]

Quite aside from the dubious provenance of defense counsel's "specific intent" instruction, we think his argument demonstrates that his objective in submitting the instruction was one of the very things the Committee and the cases cited in the Committee Comment found objectionable about the instruction: that it would suggest to the jury that in order to find the defendant guilty they would have to find that the defendant "knew his act violated the law." This is not required, as is made clear by the Committee Comment and Arambasich, 597 F.2d at 611-13.

We believe the jury was adequately instructed on the mental state required for conviction. If we recall correctly, the defendant did not complain at trial, nor does he complain in his present motion, about any lack of clarity in Court's Instruction No. 12, Government's Instruction No. 17, Government's Instruction No. 17(A), Government's Instruction No. 21 and Government's Instruction No. 21(A).

In fact, none of the instructions used the word "intent." This is one of those cases where the concepts of "knowledge" and "intent" are, as a practical matter, conflated. What the

---

[2] The 1965 and 1980 editions are available in the Library of the U.S. Courts of the Seventh Circuit.

government had to prove was that the defendant knowingly converted information and that he knowingly, without authorization, disclosed that information to another person. The jury was told in Court's Instruction No. 12 that the word "knowingly" meant "that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake or accident." The instructions describing what the government had to prove on counts I and II stressed that the defendant had to act "knowingly." If a person does something with knowledge of what he is doing – that is, if he acts knowingly, obviously he <u>intends</u> to do it. It would be superfluous to instruct the jury that the government had to prove that the defendant intended to do what he was knowingly doing.

The defendant asserts that the additional instructions the court gave the jury during their deliberations constituted error that is likely to result in a new trial. (Def.'s Mot. at 13-15.) We believe those instructions were accurate and necessary. The jury requested help with questions of law that had not been specifically addressed in the original instructions. The questions were relevant, and referring the jury back to the original instructions, as the defendant suggests we should have done, would, in our view, have been an abdication of the court's responsibility.

\* \* \* \*

We will discuss as a final matter a point that the defendant raises in just a few words, without any discussion. The defendant challenges his sentence: "The Court ... departed above the advisory range under the Sentencing Guidelines – imposing an unreasonable and harsh four-year term of imprisonment, while acknowledging that the jury convicted Mr. Ambrose on 'the bare minimum.'" (Id. at 1-2.) At the conclusion of his motion, defendant again suggests that "the Court's upward departure in sentencing Mr. Ambrose" is an additional issue likely to be raised on appeal. (Id. at 15.)

If it should be determined on appeal that the sentence is excessive, it seems unlikely that the Court of Appeals would direct the imposition of a sentence shorter than the time the defendant would serve on the present sentence prior to the appellate decision. The Guideline range was 12 to 18 months.

In any event, defendant's brief reference to the sentence, like his discussion of the court's denial of his motion to suppress his statements, does not address the extensive explanation the court gave for its conclusion that the relevant factors under 18 U.S.C. § 3553 required a sentence of at least four years and that even the maximum guideline sentence of 18 months would be inadequate to accomplish those objectives. The defendant's motion does not suggest any reason to believe that his sentence will be reversed as excessive.

18

**CONCLUSION**

For the forgoing reasons, the defendant's motion for release pending appeal is denied.

DATE:     February 3, 2010

ENTER:    _____
          John F. Grady, United States District Judge